UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LIFE INSURANCE COMPANY OF THE SOUTHWEST, | Civil Action No. 16-4936 (MCA) (MAH) |
| Plaintiff, | OPINION |
| v. |  |
| PETER NICHOLAS, |  |
| Defendant. |  |

## I. INTRODUCTION

This matter comes before the Court by way of Plaintiff Life Insurance Company of the Southwest's ("LSW") motion for leave to serve the summons and complaint by alternative means upon Defendant Peter Nicholas pursuant to Federal Rule of Civil Procedure 4(e). Pl.'s Br. in Supp. of Mot. at 3, D.E. 11-1. Specifically, LSW requests leave to effect service via two email addresses associated with Defendant Peter Nicholas. Id. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will deny Plaintiff's motion.

## II. BACKGROUND

On August 12, 2016, LSW filed this action against Defendant Peter Nicholas ("Nicholas"), alleging that on an application for a preferred level term life insurance policy issued by LSW, Nicholas made multiple "material misrepresentations of fact," including false statements regarding

1

his height, weight, driver's license number, and social security number. See generally Compl., D.E. 1. LSW alleges that "Nicholas's failure to provide accurate Social Security and driver's license identifying information, and accurate height and weight prevented LSW from completely and accurately investigating and assessing the risk presented on the application." Id. ¶ 20. LSW now seeks a judgment that Nicholas's $350,000 life insurance policy "be declared null and void and rescinded ab initio." Id. ¶ 25.

On August 15, 2016, LSW "forwarded the summons and complaint to a process server, Guaranteed Subpoena Service, Inc. ('Guaranteed Subpoena') to effect personal service upon Nicholas at 812 New York Avenue, Apt. 16, Union City, New Jersey." Certification of Plaintiff's Counsel, Louis P. DiGiamo ("DiGiamo Cert.") ¶ 6, D.E. 11-2. On August 17, 2016, Guaranteed Subpoena informed LSW that personal service could not be effectuated on Nicholas because he had allegedly moved from the Union City address. Id. ¶ 7. Guaranteed Subpoena then performed an advanced search to locate Nicholas's current address, and the search revealed "two prior Ohio addresses, possible social security numbers, date of birth, telephone number, and an email address for Nicholas ('nj-playboy@hotmail.com')." Id. ¶ 8; Exh. D. to DiGiamo Cert., D.E. 11-2. Guaranteed Subpoena also ran an additional "skip search" which listed Nicholas's current address as 4741 Rapid Run Rd., Apt. 1, Cincinnati, Ohio. Id.; Skip Search Results, Exh. D. to Mot., D.E. 11-2. Guaranteed Subpoena attempted to personally serve Nicholas at the Cincinnati address on two different days at different times, but was again unsuccessful. DiGiamo Cert. ¶ 10. A neighbor at the Cincinnati address informed the process server that Nicholas had moved six months prior. Id. LSW continued to search for a new address by contacting the United States Postmaster and by undertaking additional online searches including the LexisNexis search engine "Accurint." Id.

¶¶11-12. However, LSW was unable to find any other address for Nicholas than those previously identified. Id. ¶¶11-15.

On March 9, 2017, LSW made the present motion for substitute service. D.E. 11.

### III. DISCUSSION

LSW argues that because it has made multiple attempts to personally serve Nicholas at two different addresses, and because it has conducted multiple unsuccessful searches to determine Nicholas's current whereabouts, LSW should be permitted to serve Nicholas via two email address associated with him. Br. in Supp. of Mot. at 5-6, D.E. 11-1. One email address, milto123@live.com was provided by Nicholas on his application for the life insurance policy dated January 12, 2014. DiGiamo Cert. ¶5, D.E. 11-2. The second email address, nj-playboy@hotmail.com, was identified as an email address associated with Nicholas as a result of an "advanced search" conducted by Guaranteed Subpoena. Id. ¶8.

Federal Rule of Civil Procedure 4(e) provides that:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>     (A) delivering a copy of the summons and of the complaint to the individual personally;
>     (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Pursuant to New Jersey law, personal service is the primary and preferred method to serve an individual defendant located within the state. N.J. Ct. R. 4:4-4(a). However, when personal

3

service cannot be effectuated in accordance with N.J. Ct. R. 4:4-4(a), New Jersey law allows for substitute modes of service so long as the proposed form of service is "provided by court order, consistent with due process of law." See N.J. Ct. R. 4:4-4(b)(3).

Before seeking a court order pursuant to Rule 4:4-4(b)(3), an "affidavit of diligent inquiry is required to disclose the efforts made to ascertain the defendant's whereabouts." Modan v. Modan, 327 N.J. Super. 44, 47 (App. Div. 2000). "There is no objective formulaic standard for determining what is, or is not, due diligence. Instead…due diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." Id. at 48 (internal citation and quotations omitted). "In short, a plaintiff must demonstrate a good faith, energetic effort to search and find a defendant whose address is unknown, or who is allegedly evading service, before resorting to alternate means of substitute service." J.C. v. M.C., 438 N.J. Super. 325, 331 (Ch. Div. 2013). Due diligence does not require a plaintiff to "take every conceivable action" to find a defendant's whereabouts. Guardian Life Ins. Co. of Am. v. Crystal Clear Indus., 2012 WL 1884003, *5 (D.N.J. 2012) (citations omitted). Once a plaintiff has exhibited that it exercised reasonable due diligence, "a court may order an alternative means of service that is consistent with due process." Guardian Life Ins. Co. of Am. v. Estate of Matesic, 2016 WL 3763340, *2 (D.N.J. 2016).

In this case, LSW has submitted an affidavit of diligent inquiry which demonstrates that a "good faith, energetic effort to search and find a defendant whose address is unknown" was undertaken. J.C., 438 N.J. Super. at 331. For example, counsel has certified that its process server, Guaranteed Subpoena, performed searches on multiple databases in an attempt to locate a current address for Nicholas. See DiGiamo Cert., D.E. 11-2. The process server attempted to personally serve Nicholas at addresses associated with him in Union City, New Jersey and in Cincinnati,

Ohio. Id. ¶¶ 7, 10. Counsel for LSW also conducted searches using "on-line research tools that look to numerous public records to locate missing persons" and the LexisNexis search engine "Accurint." Id. ¶12. Finally, counsel for LSW also contacted the United States Post Office to determine whether Nicholas had identified any changes of address. Id. ¶11. Based on LSW's varied and numerous attempts to locate Nicholas and personally serve him, the Court is satisfied that LSW has exercised "reasonable diligence."

Although LSW has demonstrated to the Court that it was diligent in attempting to identify Nicholas's current whereabouts, the Court's inquiry does not end there. As stated by N.J. Ct. R. 4:4-4(b)(3), any form of substitute service must be "consistent with due process of law." See also Marlabs Inc. v. Jakher, 2010 WL 1644041, *3 (D.N.J. 2010) (explaining that a proposed means of alternative service must comport with constitutional notions of due process.) The United States Supreme Court has explained that the proposed method of service must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). "[C]ourts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002). However, what qualifies as sufficient service depends on each case's particular facts and circumstances. See Prediction Co. LLC v. Rajgarhia, 2010 WL 1050307, at *1. (S.D.N.Y 2010).

LSW's submissions in support of the motion for substitute service fail to establish that the proposed means of service, i.e. emailing two addresses associated with Nicholas, would comport with constitutional notions of due process. LSW has failed to indicate that it has ever

5

communicated with Nicholas using these email addresses, nor has LSW made any showing that the email addresses are currently operative. Although Nicholas personally provided one of the email addresses on his application for life insurance, the application was filed over three years ago, and LSW has failed to demonstrate that the email address on his application has been used at all since January 2014. As such, LSW has made no showing that serving the summons and complaint upon these two email addresses would sufficiently apprise Nicholas of the action pending against him and would afford him the opportunity to present a defense. See Mullane, 339 U.S. at 314. Therefore, this motion is denied without prejudice.

*s/ Michael A. Hammer*_____
**United States Magistrate Judge**

Dated: August 29, 2017.